STRELLOW v. SCHLOSS.

(District Court, M. D. Pennsylvania. December 21, 1906.)

No. 83.

BANKRUPTCY—INSOLVENCY—LIABILITY OF BANKRUPT FOR DEBTS OF BUSINESS
CONDUCTED IN HIS NAME.

One Schloss, an alleged bankrupt, was the manager and apparent head
of a store conducted under the name of the "Schloss Department Store,"
and goods were ordered for and came shipped to it in that name. He
had printed and used billheads with that name upon them, kept the bank
account of the business in his own name, and on one occasion made a state-
ment showing his financial condition when ordering goods for the store.
*Held*, that he could not avoid liability for the debts contracted in the
business on the ground that another was the real party in interest, and he
was merely an employé, where such fact was not stated to nor known by
the creditors, nor defeat bankruptcy proceedings on the claim of solvency
where the concern was insolvent.

In Bankruptcy. On rule for new trial.

R. L. Grambs and R. W. Rymer, for the rule.
Edward W. Thayer, opposed.

ARCHBALD, District Judge. The respondent contests the pro-
ceedings, and asserts his solvency, and this was the issue tried. It
depends upon whether he is personally liable for the merchandise
which went into the store at Clarks Summit, Pa., of which he was
the apparent head. He claims not to be, because he was merely a
manager of the store, without any interest beyond his salary, and that,
so far as it is made to seem otherwise, he was the dupe of Okell, who
imposed upon his inexperience and used him for his own ends. The
jury apparently believed this and found in his favor, but unfortunate-
ly it is not sustained by the evidence, or there are at least other things
which control. Upon his own admission he knew that the store was
run as the "Schloss Department Store," and that goods were ordered
for and came shipped to it in that name. This could refer to no one
but himself, and he thus gave it the sanction of his name. It is un-
disputed, also, that he used letter and billheads in the business of the
store with this designation on them, the bill for printing which he ac-
knowledged as his own; that a bank account was opened and carried
on in his own individual name, in which the money received from
the sale of goods was deposited, and on which he drew checks to pay
for things that went into the store. It was also clearly shown that
in one instance at least, when in New York ordering goods, he made
a detailed statement with regard to his financial standing, the only
possible occasion for which was that he was the owner of the store.

It is of no avail against this that, as he says, he protested to Okell
when goods came charged to him individually. He did not send them
back, neither did he take pains to repudiate the other use of his name.
And even if it be accepted as evidence that Okell was the real party in
interest, that goods which were shipped to the store were diverted un-
opened and in bulk to the place which Okell had opened at Carbondale,
it was not only with the knowledge and connivance of Schloss, but by

his active assistance, that this was done. And the same is true with regard to the goods that were carted down to Scranton. Combining and conspiring with Okell, in this way, to cheat and defraud the creditors of the Clarks Summit store, as he confessedly did, instead of relieving him from liability, it all the more fastens it upon him, and he is fortunate to escape simply with civil responsibilty.

Taking this view of the case, as I am compelled to do, it would be a travesty on justice to let the verdict stand, and the rule for a new trial is made absolute.